943 So.2d 1113 (2006)
John J. ALMON, Jr.
v.
Kathye Maria Caporale ALMON.
No. 2005 CA 1848.
Court of Appeal of Louisiana, First Circuit.
September 15, 2006.
*1114 Mark Alan Jolissaint, Slidell, Counsel for Plaintiff/Appellant, John J. Almon, Jr.
Jane L. Triola, Pearl River, Mary Clemenence Devereaux, Covington, Counsel for Defendant/Appellee, Kathye Maria Caporale Almon.
Before: CARTER, C.J., WHIPPLE and McDONALD, JJ.
WHIPPLE, J.
This matter is before us on appeal by John Almon from a judgment of the trial court dismissing his rule to terminate permanent spousal support with prejudice. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
By judgment dated April 15, 2004, Mr. Almon was ordered to pay Mrs. Kathye Almon permanent spousal support in the amount of $600.00 per month. On January 31, 2005, Mr. Almon filed a rule to terminate permanent spousal support alleging that Mrs. Almon had cohabited with another person in the manner of married persons thereby extinguishing her entitlement to permanent spousal support, pursuant to LSA-C.C. art. 115. Mr. Almon alternatively *1115 requested that his monthly spousal support award be reduced because he had been laid off from his employment and was therefore unemployed.
On May 3, 2005, a hearing was held before the trial court. At the hearing, counsel for Mr. Almon conceded that although Mr. Almon was unemployed, there had been no change in financial circumstances at that time that would warrant a reduction in his spousal support obligation. He then dismissed the portion of the rule requesting a reduction on the basis of Mr. Almon's unemployment. However, the trial proceeded on the issue of termination of Mr. Almon's permanent spousal support obligation due to Mrs. Almon's alleged cohabitation. After hearing testimony, the trial court rendered judgment dismissing the rule with prejudice finding that the circumstances presented were not sufficient to establish that Mrs. Almon "cohabited with another person in the manner of married persons," as required by LSA-C.C. art. 115. A written judgment was signed May 18, 2005.
Mr. Almon appeals, contending that the trial court erred in its factual findings and in failing to conclude that Mrs. Almon had "cohabited" with another person "in the manner of married persons" sufficient to warrant the termination of Mr. Almon's spousal support obligation.

DISCUSSION
The appellate court's review of factual findings is governed by the manifest error-clearly wrong standard. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court; and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993). The manifest error standard of review obligates an appellate court to give great deference to the trial court's findings of fact. We will not reverse factual determinations, absent a finding of manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Louisiana Civil Code article 115, which governs the extinguishment of spousal support obligations provides, as follows: "The obligation of spousal support is extinguished upon the remarriage of the obligee, the death of either party, or a judicial determination that the obligee has cohabited with another person of either sex in the manner of married persons."
Article 115 was last amended by Acts 1997, No. 1078, § 1, effective January 1, 1998. As discussed in Arnold v. Arnold, XXXX-XXXX (La.App. 1st Cir.4/2/03), 843 So.2d 1167, 1171, prior to the application of 1997 La. Acts No. 1078, article 112(A)(4) provided that "[p]ermanent periodic alimony . . . terminates if the spouse to whom it has been awarded remarries or enters into open concubinage." However, the phrase "open concubinage" is no longer used in the Louisiana Civil Code to identify a manner of extinguishment of the spousal support obligation. Instead, with regard to the modification or extinguishment of a spousal support obligation, LSA-C.C. art. 115 requires "a judicial determination that the obligee has cohabited with another *1116 person of either sex in the manner of married persons."
According to Revision Comment (e), the new language used in article 115, i.e., "cohabited with another person . . . in the manner of married persons[,] means to live together in a sexual relationship of some permanence . . . It does not mean just acts of sexual intercourse." The phrase further "obviates the difficulties of proving absence of concealment" inherent in the term "open concubinage." See LSA-C.C. art. 115, Revision Comment (e); see also Arnold, 843 So.2d at 1171.
In rendering its findings, the trial court stated as follows:
Article 115 states cohabitated (sic) in the manner of married persons. I went to Webster's Dictionary and looked up cohabit and cohabiting. The archaic version is to dwell or abide in company. The second definition says to dwell or live together as husband and wife. In the United States, at the common law, marriage is presumed when a man and woman have cohabitated permanently together being reputed by those who know them to be husband and wife and admitting the relationship. The presumption is removed if the relationship is proved to have been an  of illicit origin.
The evidence shows clearly that Mr. Perine came to the house of Mrs. Almon, her testimony is originally as a friend to help her out with a child who was anorexic and this man would go feed the child. Then she said she felt some obligation to him, apparently when he needed a place to live, because of what he had done to help her. She freely admitted that he slept in her house, but she says he slept downstairs and kept his clothing in the garage. And she freely admitted that they engaged in sex occasionally.
I've already said that my view of marital sex is archaic, and it is. [Counsel for Mr. Almon]'s example of if somebody went on a cruise and had sex, that was not living like married people. What if they went on a cruise every weekend, would that still not be married people or what if you went on a cruise with a different partner every weekend? I mean, I just think that sex in this country has become casual, not to my liking, but apparently it has become casual.
According to Webster and the common law, and I know we're a civil law jurisdiction, but you have to hold yourself out to be a married person. And I don't think that happened here. And having basically no case law from Louisiana to go on, I'm going to find that while Mrs. Almon had this man to share her house, not necessarily her bedroom, and occasionally had sex with him, that it did not rise to a manner of married persons, and I'm going to deny the rule to terminate permanent alimony.
On appeal, Mr. Almon argues the trial court misinterpreted and misapplied the provisions of LSA-C.C. art. 115. In support, he cites to an isolated statement by the trial court in its oral reasons, "you have to hold yourself out to be a married person," and argues that the article does not require proof that Mrs. Almon held herself out as being married to the person with whom she is living in order to be deemed to be "living in the manner of a married person."
After a complete reading of the trial court's reasons, we find that Mr. Almon has taken this statement out of context. A reading of the reasons in their entirety shows that the trial court correctly applied the standard set forth in the article. Moreover, we find the record supports the court's factual finding "that while Mrs. Almon had this man to share her *1117 house, not necessarily her bedroom, and occasionally had sex with him, that it did not rise to a manner of married persons." Thus, the trial court properly denied the rule to terminate permanent spousal support.
Mr. Almon further argues that, according to Arnold and Booth v. Samuels, 97-2395 (La.App. 4th Cir.5/20/98), 712 So.2d 1037, writ denied, 98-1563 (La.9/18/98), 724 So.2d 764, "living together in the manner of married persons simply means to `live together in a sexual relationship of some permanence.'" While living together in a sexual relationship of some permanence is certainly a factor, the statute does not provide for extinguishment of a spousal obligation, where, as here, the evidence establishes only random acts of sexual intercourse. After thorough review of Arnold and Booth, we find Mr. Almon's reliance on these cases misplaced, as the instant case is factually distinguishable.
At the hearing, Mrs. Almon testified that Mr. Terry Perine lived in her home for approximately one year, from the latter part of 2003 to December of 2004, and also for a few months prior to 1999 when Mr. Perine was released from a rehab program, because he had nowhere else to stay. Mrs. Almon testified that she allowed him to reside there because she felt obligated to Mr. Perine and felt that she owed him a "big favor" because he had helped Mrs. Almon by coming to feed her daughter, who suffered from anorexia, when Mrs. Almon was working at night. She stated that when circumstances arose that Mr. Perine had nowhere else to stay, she allowed him to live in her home. In return, although Mrs. Almon did not insist that Mr. Perine pay a specific amount as rent, Mr. Perine agreed to help Mrs. Almon pay for her monthly medication, pay for groceries, and perform repairs and small jobs around her home. Mrs. Almon testified that on many occasions, Mr. Perine would tell her "This is my last job, then I'm going to leave." Mrs. Almon stated that initially she would reply that that was fine with her. However, Mrs. Almon further testified that she became dissatisfied with the financial arrangements in return for housing after he expressed his desire that she "give him part of the house" in return for the repairs he made. In explaining why he had resided on the premises for the time period at issue, she stated that Mr. Perine would always begin working on a new repair project in the house despite knowing that Mrs. Almon did not want him to continue to live there.
Mrs. Almon testified that during the time in question, Mr. Perine did not share Mrs. Almon's bedroom. He did not keep his belongings, i.e., clothes and toiletries, in her bedroom. Instead, during the time he lived at Mrs. Almon's home, he slept downstairs and kept his clothing in the garage in a laundry basket. Mrs. Almon testified that she did not want or allow Mr. Perine to share her bedroom, and, in fact, kept an outside lock on her bedroom door to keep Mr. Perine out of her bedroom. Mrs. Almon described one occasion wherein she was forced to file a complaint with the police after Mr. Perine attempted to cut through the lock on her bedroom door. This incident occurred shortly before Mrs. Almon terminated their financial arrangements and asked Mr. Perine to move out of the residence.
Although Mrs. Almon testified that they had engaged in sexual relations on occasion at the commencement of his residency, she never committed to having any type of romantic relationship with him because they were not involved in such a relationship. Mrs. Almon stated that they stopped having sexual relations early on *1118 because there was no affection involved in it. Mrs. Almon further testified that she and Mr. Perine did not "date," they were not an "item," and they did not attend parties or social functions together as a "couple." Mrs. Almon did not consider or introduce Mr. Perine as her "boyfriend," nor did she consider them a "couple." Mrs. Almon testified that they never discussed marriage and stated that she had not engaged in nor expected to have any long-term or other relationship with Mr. Perine, other than noted above.
A thorough review of the record and testimony contained therein reveals that Mrs. Almon and Mr. Perine did not "live together in a sexual relationship of some permanence" as contemplated by the statute.[1]See LSA-C.C. art. 115, Revision Comment (e). Moreover, although Mrs. Almon testified that she and Mr. Perine had engaged in sexual relations on occasion in the early part of his residing in her home, "cohabited . . . in the manner of married persons," does not mean just acts of sexual intercourse. See LSA-C.C. art. 115, Revision Comment (e); see also Scott v. Scott, 579 So.2d 1094, 1096 (La.App. 2nd Cir.1991). Considering the record in its entirety, the record does not support a finding that Mrs. Almon and Mr. Perine were cohabiting with one another "in the manner of married persons" as required by LSA-C.C. art. 115 to warrant the termination of Mr. Almon's permanent spousal support obligation.
Accordingly, we find no error in the trial court's factual findings and determinations herein, which are amply supported by the record.

CONCLUSION
Based on the above and foregoing reasons, the judgment of the trial court dismissing Mr. Almon's rule to terminate permanent spousal support with prejudice is affirmed. Costs of this appeal are assessed against Mr. Almon.
AFFIRMED.
NOTES
[1] We note that Kenneth John Landry, a private investigator, was also called to testify at the hearing before the trial court. Landry testified that he was retained by Mr. Almon to conduct surveillance on Mrs. Almon's home at 219 Grafton Street. Landry testified that from February 12, 2004 to July 22, 2004 his surveillance revealed that a silver Chevrolet pick-up truck registered to Mr. Perine was routinely parked at Mrs. Almon's residence. However, as noted herein, Mrs. Almon does not dispute that Mr. Perine lived at the residence during that time period, albeit under circumstances other than those suggested by Mr. Almon.