ROBERT A. CHAISSON, Judge.
|2On appeal, Lynn Olsen challenges the trial court’s denial of her exception of res judicata and the grant of her ex-husband’s *276 motion to extinguish periodic spousal support. For the reasons that follow, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
Paul Thomas Olsen and Lynn Cooper Olsen were married on December 19, 1969, and were granted a judgment of divorce on November 22, 2005. In that judgment, Paul Olsen and Lynn Olsen consented to various issues involving use of the family home and spousal support. With regard to spousal support, the parties agreed that “Paul Thomas Olsen shall pay periodic spousal support to Lynn Cooper Olsen in the amount of $700.00 monthly, payable in equal semi-monthly installments of $350.00, payable on the first and fifteenth days of each month, the first payment being due on the 1st day of December, 2005.”
Thereafter, on February 22, 2011, Paul Olsen filed a motion to extinguish periodic spousal support on the basis that Lynn Olsen, on June 1, 2010, began | .¡cohabiting with Gary Gregory in the manner of married persons. This motion was first considered by the domestic hearing officer who recommended that Paul Olsen’s motion to extinguish spousal support be granted pursuant to LSA-C.C. art. 115 based on her finding that Lynn Olsen and Gary Gregory were cohabiting in the manner of married persons. On April 20, 2011, the recommendation of the hearing officer was made the interim judgment of the court.
Lynn Olsen thereafter filed an objection to the hearing officer’s recommendation and interim order requesting a de novo review in the district court. She also filed an exception of res judicata arguing that Paul Olsen was precluded from raising the issue of spousal support because the parties had previously entered into a consent judgment regarding spousal support and that judgment has since become final.
On July 26, 2011, the district court conducted a hearing on Lynn Olsen’s exception of res judicata and her objection to the recommendation of the hearing officer. After considering the arguments of counsel and the evidence presented, the trial court denied Lynn Olsen’s exception of res judi-cata and granted Paul Olsen’s motion to extinguish spousal support, finding that the parties were living together “in a manner of married persons.” On August 8, 2011, the trial court signed a written judgment which denied Lynn Olsen’s exception of res judicata and her objection to the hearing officer’s recommendation and interim order. Lynn Olsen thereafter appealed.
On February 28, 2012, this Court dismissed Lynn Olsen’s appeal because the record did not contain a signed judgment on Paul Olsen’s motion to extinguish spousal support. This Court further noted that the judgment overruling the peremptory exception of res judicata is interlocutory and thus not appealable. Olsen v. Olsen, 11-1001 (La.App. 5 Cir. 2/28/12), 88 So.3d 1158. On July 18, |42012, the trial court signed an amended judgment which denied Lynn Olsen’s exception of res judi-cata, affirmed the April 20, 2011 recommendation of the hearing officer, and terminated Paul Olsen’s obligation to pay spousal support, finding that “Lynn Cooper Olsen has cohabited with a person of the opposite sex in the manner of married persons.” Lynn Olsen again appeals.
DISCUSSION
On appeal, Lynn Olsen first argues that the trial court erred in denying her exception of res judicata. She contends that the doctrine of res judicata applies and precludes Paul Olsen from raising the issue of spousal support because the par *277 ties had previously entered into a consent judgment regarding spousal support and that judgment has since become final.[1]
In the instant case, the parties agreed, as reflected in the judgment of divorce, to the amount of spousal support as follows: “Paul Thomas Olsen shall pay periodic spousal support to Lynn Cooper Olsen in the amount of $700.00 monthly, payable in equal semi-monthly installments of $850.00, payable on the first and fifteenth days of each month, the first payment being due on the 1st day of December, 2005.”
A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. LSA-C.C. art. 3071. A compromise precludes subsequent litigation based on the matter that was compromised. LSA-C.C. art. 3080. It is well settled that a valid compromise can form the basis of a plea of res | -judicata because a compromise has the legal efficacy of a judgment. Hamsa v. Hamsa, 05-219 (La.App. 5 Cir. 12/27/05), 919 So.2d 776, 778.
The doctrine of res judicata is set forth in LSA-R.S. 13:4231, et seq. The essence of the doctrine is that a valid final judgment is conclusive between the parties, and all causes of action arising out of the transaction or occurrence that is the subject of the suit are extinguished and merged into a judgment in favor of the plaintiff, or are extinguished and merged into a judgment in favor of the defendant as to preclude subsequent action. This bars the subsequent relitigation of any issue that was actually litigated and determined if that determination was essential to the judgment. Riche v. Riche, 09-1354 (La.App. 3 Cir. 4/7/10), 34 So.3d 1004, 1008.
LSA-R.S. 13:4232 sets forth exceptions to the general rule of res judicata. In particular, Paragraph B of that statute addresses res judicata as it applies to actions for divorce and those matters incidental to divorce, including spousal support. It reads as follows:
In an action for divorce under Civil Code Article 102 or 103, in an action for determination of incidental matters under Civil Code Article 105, in an action for contributions to a spouse’s education or training under Civil Code Article 121, and in an action for partition of community property and settlement of claims between spouses under R.S. 9:2801, the judgment has the effect of res judicata only as to causes of action actually adjudicated.
This provision serves to limit the application of the doctrine of res judicata in divorce proceedings and certain matters incidental to divorce, including actions for *278 spousal support. Guillory v. Guillory, 09-988 (La.App. 3 Cir. 2/3/10), 29 So.3d 1288, 1292. Moreover, consent judgments are generally subject to modification or termination by a showing of a change in circumstance of either party, including termination of support pursuant to LSA-C.C. art. 115. Rosenfeld v. Rosenfeld, 11-686 (La.App. 5 Cir. 3/13/12), 90 So.3d 1077, 1080.
LTo support her argument that res judi-cata is applicable to the circumstances herein, Lynn Olsen relies heavily on this Court’s decision in Hamsa v. Hamsa, supra. That case is clearly distinguishable from the instant case. In Hamsa, this Court was faced with the issue of whether the ex-wife’s remarriage nullified the terms of the consent judgment reached between the parties regarding alimony. In the consent judgment, Rudolph Hamsa agreed to pay Cynthia Hamsa the full sum of $47,000 for alimony and spousal support inclusive of all past claims for spousal support, for all future claims, and for all claims for costs and attorney fees. The consent judgment further provided that it represented a compromise of the full claims of all alimony issues either party had against each other. After Cynthia Hamsa remarried, Rudolph Hamsa ceased the payment of the monthly installments. Thereafter, Cynthia Hamsa filed a motion to make all terms of the consent judgment executory, and Rudolph Hamsa filed a motion seeking return of all alimony payments made after his former wife’s remarriage. Based on the previous execution of the consent agreement between the parties, Cynthia Hamsa then filed an exception of res judicata to Rudolph Hamsa’s pleadings.
The trial court granted Cynthia Hamsa’s exception of res judicata, and this Court affirmed that ruling. This Court found that under the circumstances, the provisions of LSA-C.C. art. 115 have no application where a lump sum alimony judgment included a significant past obligation. This Court further found that as the issue of alimony was fully litigated between the parties and resulted in a valid compromise agreement, the principles of res judicata prevented Rudolph Hamsa from relitigat-ing the issue by attempting to terminate the monthly installments established by consent agreement. Hamsa v. Hamsa, 919 So.2d at 779.
Unlike the terms of the consent agreement at issue in Hamsa v. Hamsa, supra, Paul Olsen did not agree to pay Lynn Olsen a lump sum award representing 17a valid compromise of all past, present, or future claims. Further, the consent agreement between Paul Olsen and Lynn Olsen contained no language stating that it was to constitute a compromise of all issues of alimony between the parties. Lastly, the judgment contained no language stating that Paul Olsen agreed to waive his right to have his spousal support obligation terminated pursuant to the provisions of LSA-C.C. art. 115. See Rosenfeld v. Ro-senfeld, supra at 1080-81. Under the circumstances presented herein, we find that the doctrine of res judicata is inapplicable; therefore, we find no error in the trial court’s denial of Lynn Olsen’s exception of res judicata.
On appeal, Lynn Olsen next argues that the trial court erred in terminating the monthly spousal support payments based on its erroneous finding that Lynn Olsen and Gary Gregory were living together in the manner of married persons.
A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Under the manifest error standard, in order to reverse a trial court’s determination of a fact, an appellate court must review the record in its entirety and *279 (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. On review, an appellate court must be cautious not to reweigh the evidence or to substitute its own factual findings just because it would have decided differently. Bonin v. Fer-rellgas, Inc., 03-8024 (La.7/2/04), 877 So.2d 89, 94-95.
The trial court conducted a hearing on Paul Olsen’s motion to extinguish spousal support on July 26, 2011. At the hearing, Lynn Olsen testified that Gary Gregory began living with her after his release from jail in Georgia. She claimed that they had separate rooms, but admitted they had sexual intercourse or attempted sexual intercourse on occasion. Lynn Olsen further testified that Gary Gregory | ^received his mail at the house, that they ate together, that she helped him pay off some land that his family owned, and that she visited him in the hospital. She admitted that they discussed matrimony and that she told Paul Olsen and other people in the community that they were considering matrimony.
Gary Gregory also testified at the hearing. He stated that he has known Lynn Olsen since she was sixteen years old, that they corresponded while he was in jail, and that he moved in with her following his release from prison. He claimed that he had his own bedroom and bath at the house. While he admitted that they occasionally slept in the same bed, he denied that they had sexual intercourse, claiming it was impossible on his part. Further, the two ate and cooked together, he received his mail there, and he told the probation and parole department that this was his residence. Gary Gregory also admitted that they talked about marriage.
Paul Olsen testified that he knew Gary Gregory lived with Lynn Olsen, that she admitted they had sexual intercourse, that she took him to the hospital and checked on him, and that she then moved him back into her house.
Kenny Arcement testified that he has known the Olsens for a long time and that he rented Lynn Olsen some property in Gretna. She originally moved in there with a nephew, but then Gary Gregory moved in with her. Kenny Arcement had been to the house on several occasions and saw that they maintained separate bedrooms and bathrooms. He also claimed that Gary Gregory told him that he had no plans to marry Lynn Olsen.
After listening to this testimony, the trial court determined that “this is more than two (2) friends living together with benefits,” and that these parties were living together “in a manner of married persons.” Based on these findings, the trial court granted Paul Olsen’s motion to extinguish the spousal support pursuant to | ¡¡LSA-C.C. art. 115. That article provides that “the obligation of spousal support is extinguished upon the remarriage of the obligee, the death of either party, or a judicial determination that the obligee has cohabited with another person of either sex in the manner of married persons.”
In Arnold v. Arnold, 02-819 (La.App. 1 Cir. 4/2/03), 843 So.2d 1167, 1171, the appellate court found that the evidence was sufficient to support the trial court’s finding that the former wife “cohabited in the manner of married persons,” as required for the extinguishment of the obligation of spousal support. In Arnold, the wife testified that within one month of moving out of the marital domicile, her boyfriend moved into her apartment with her, and the two were still living together at the time of the hearing on the husband’s motion to terminate support. The former *280 wife also testified that her boyfriend kept his personal belongings in the apartment, such as clothing, shaving cream, and razors. The boyfriend testified about their living arrangements, noting that he and the wife never hid the fact that they were living together. Based on these facts, the appellate court found no error in the trial court’s termination of spousal support pursuant to LSA-C.C. art. 115.
In contrast, in Almon v. Almon, 05-1848 (La.App. 1 Cir. 9/15/06), 943 So.2d 1113, the appellate court found that the record supported the trial court’s finding that the former wife and her male friend were not living together “in the manner of married persons,” as required so as to warrant a termination of the husband’s spousal support obligation. In her appellate brief, Lynn Olsen relies on this case to support her position that the evidence was not sufficient to show that she and Gary Gregory lived in the manner of married persons. We find the Almon case distinguishable from the facts herein.
In Almon, supra, a male friend, Mr. Perine, lived in Ms. Almon’s home when circumstances arose that he had nowhere else to stay. Ms. Almon testified |inthat she felt an obligation to her friend because he helped her by coming to feed her daughter, who suffered from anorexia. In exchange, Mr. Perine helped her financially and repaired things around the house. During the time in question, they did not share a bedroom; he slept downstairs and kept his belongings in the garage in a laundry basket. Ms. Almon also testified that she did not want or allow Mr. Perine to share her bedroom, and, in fact, kept an outside lock on her bedroom door to keep Mr. Perine out of her bedroom. While she admitted that they engaged in sexual relations on occasion at the beginning of his residency, she never committed to having any type of romantic relationship with him, and there was no affection between the two. Ms. Almon testified that she and Mr. Perine did not date, that they did not attend parties or social functions together as a couple, that she did not introduce or consider him her boyfriend, and that they never discussed marriage. Based on these facts, the appellate court affirmed the trial court’s finding that Ms. Almon and Mr. Perine were not cohabiting in the manner of married persons so as to warrant a termination of the husband’s spousal support obligation.
Unlike the facts in Almon, supra, Lynn Olsen and Gary Gregory were clearly living together in a relationship of some permanence. The two ate and cooked together, he received his mail at the house, and he told the probation and parole department that this was his residence. While they claimed to have separate rooms, they sometimes slept in the same bed and had sexual intercourse or attempted sexual intercourse. More importantly, they openly discussed marriage.
Having considered the record in its entirety, we find that the record supports the trial court’s determination that Lynn Olsen and Gary Gregory were cohabiting with one another “in the manner of married persons,” as required to extinguish Paul Olsen’s spousal support obligation. Accordingly, we find no error in the trial Incourt’s factual findings and determinations herein, which are amply supported by the record.
CONCLUSION
Based on the foregoing reasons, we affirm the trial court’s denial of Lynn Olsen’s exception of res judicata and the grant of Paul Olsen’s motion to extinguish spousal support.

AFFIRMED

. On appeal, counsel for Paul Olsen argues that the denial of an exception of res judicata is an interlocutory judgment and thus not appealable. Although interlocutory judgments are generally not appealable, when an unrestricted appeal is taken from a final judgment, an appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him in addition to the review of the final judgment. Louisiana Local Government Environmental Facilities v. All Taxpayers, 11-0027 (La.App. 1 Cir. 2/2/11), 56 So.3d 1194, 1200, writ denied, 11-0467 (La.4/25/11), 62 So.3d 93; Territo v. Schwegmann Giant Supermarkets, Inc., 95-257 (La.App. 5 Cir. 9/26/95), 662 So.2d 44, 46, writ denied, 95-2584 (La. 12/15/95), 664 So.2d-445. We note that the first time Lynn Olsen appealed the denial of the exception of res judicata, there was not a final signed judgment before this Court for review. We now have a final signed judgment before this Court for appellate review. Therefore, the issue of whether the trial court erred in denying the exception of res judicata is properly before this Court.