STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2024 CU 0692

LANCE BOUDREAUX

VERSUS

CARLEY WEBSTER

Judgment Rendered: **NOV 1 3 2024**

* * * * *

On Appeal from the
18th Judicial District Court
Parish of Iberville, State of Louisiana
Trial Court No. 79230

The Honorable Elizabeth A. Engolio, Judge Presiding

* * * * *

Vincent A. Saffiotti
Natalie C. Neale
Baton Rouge, Louisiana

Attorney for Plaintiff-Appellee,
Lance Boudreaux


Nicole Dufrene Streva
Morgan City, Louisiana

Attorney for Defendant-Appellant,
Carley Webster

* * * * *

BEFORE: WOLFE, MILLER, AND GREENE, JJ.

Miller, J dissents w/ reasons

**WOLFE, J.**

In this matter, the mother appeals from two trial court judgments. The first established the father as the domiciliary parent. The second granted an award of attorneys' fees to the father for the mother's frivolously filed Petition for Protection from Abuse. For the following reasons, we affirm both judgments.

## FACTS

This child custody litigation was previously before this court in May 2023 and portions of this section are taken from this court's prior opinion in **Boudreaux v. Webster**, 2022-1282 (La. App. 1st Cir. 5/19/23), 2023 WL 3573901 (unpublished), <u>writ denied</u>, 2023-00848 (La. 9/6/23), 369 So.3d 1269.[1] Lance Boudreaux ("Lance") and Carley Webster ("Carley") had a romantic relationship and are the parents of one child, Wyatt Paul Webster ("Wyatt"), born on August 18, 2019. **Id.** at *1. The parties previously entered into a stipulated judgment on February 27, 2020, which awarded them joint custody, with Carley designated as the domiciliary parent, established child support, and decided other matters. Later, on May 13, 2020, the parties entered into another stipulated judgment, providing for alternate weekend visitation for Lance, as well as various other incidental matters. Eventually, the parties entered into a third stipulated judgment, which was signed by the trial court on October 21, 2021. The third judgment provided for joint custody, with equal shared physical custody on a rotating schedule, and continued Carley as the domiciliary parent. **Id.** at *2.

On February 16, 2022, Lance filed a rule to modify custody, asserting a material change in circumstances. He sought to be designated the domiciliary parent, in addition to a modification of physical custody so that Wyatt would primarily reside with him. Carley filed a responsive pleading and averred that the

---

[1] As discussed later, the record as designated by Carley, the appellant, is silent as to any proceeding prior to April 27, 2023.

2

parties agreed to an extrajudicial, week-to-week rotating custody schedule as Wyatt would soon be attending school. Carley requested that physical custody be modified and that Wyatt be allowed to reside primarily with her during the school year and spend alternate weekends with Lance. The matter proceeding to trial on August 1, 2022. At the conclusion, the trial court ordered that joint custody continue, with continuing equal physical custody on an alternating weekly basis, and designated Lance and Carley as co-domiciliary parents. The trial court signed the judgment on September 1, 2022. Lance appealed the judgment to this court. **Id.** at *2. On review, this court reversed, in part, the trial court's designation of Lance and Carley as co-domiciliary parents, and remanded the matter "to the trial court for a prompt hearing and determination of a domiciliary parent unless there is an implementation order to the contrary or for other good cause shown." **Id.** at *5.

Following this court's May 19, 2023 ruling, a number of motions and pleadings were filed with the trial court, convoluting the procedural history. On May 23, 2023, Carley filed a Petition for Protection from Abuse, claiming Lance physically abused her by pushing her, and that she "fear[ed] [for her] life around [Lance]." Later, on September 20, 2023, Carley filed a Motion to Recuse Judge Alvin Batiste, Jr., who presided over the earlier August 1, 2022 custody trial, due to a conflict with her counsel of record. The trial court granted the recusal on September 21, 2023, and the matter was then allotted to Judge Elizabeth A. Engolio. Also on September 21, 2023, Carley filed a *second* Petition for Protection from Abuse, this time on behalf of Wyatt, asserting allegations of sexual assault against Wyatt by Lance. A hearing on Carley's May 23, 2023 Petition for Protection from Abuse was held on October 4, 2023 at which time the trial court denied Carley's petition, found it was frivolously filed, and awarded $8,565.75 in attorneys' fees to Lance. As to Carley's second filed Petition for Protection from Abuse, the parties began discussing the matter during court on October 4, 2023, but the hearing was

3

continued to October 18, 2023 on Carley's motion. When the matter was taken up again, Carley voluntarily dismissed her second Petition for Protection from Abuse, at which time Lance requested additional attorneys' fees. A signed judgment resulting from the October 4 and 18, 2023 hearings memorialized the trial court's granting of attorneys' fees regarding Carley's first Petition for Protection from Abuse, noted the dismissal of Carley's second Petition for Protection from Abuse, and stated the hearing on the domiciliary parent designation was set for December 20, 2023.

Following the dismissal of both of Carley's Petitions for Protection from Abuse, on October 24, 2023, Lance filed a Rule for "Make Up" Custodial Periods, wherein he requested additional custodial time with Wyatt for the time missed due to the temporary restraining orders put in place, as well as a specific request for attorneys' fees for having to defend against Carley's second Petition for Protection from Abuse. This Rule was set for hearing on December 20, 2023, the same date the trial court was set to determine domiciliary parent status.

Further, on October 30, 2023, Carley filed a Motion to Recuse Judge Elizabeth A. Engolio based on a statement she made during a pretrial conference that she could not rule on the pending domiciliary issue "in a vacuum" or "in a bubble[,]" to which Carley assumed this implied Judge Engolio would "take into consideration the pleadings, evidence, and trial testimony from the two (2) petitions for protection from abuse that were filed by [Carley] *after* the original custody trial was had and *after* the First Circuit remanded, which is outside the records to decide the issue at hand." Carley stated that, "after having the pretrial conference and being told that she will not be able to rule on the domiciliary issue without taking other evidence into consideration, [Carley] believes that Judge Engolio is unable to render an impartial decision in this matter." A hearing was held on December 1, 2023, at which time, Judge Guy Holdridge, *ad hoc*, denied Carley's motion, ruling, "[t]he

4

fact that Judge Engolio has heard other matters involving the parties does not show that she is bias[ed] for or against either party."

Finally, on January 10, 2024, a hearing was held regarding domiciliary parent status, pursuant to this court's remand, and on Lance's Rule for "Make Up" Custodial Periods. Following the hearing, the trial court designated Lance as Wyatt's domiciliary parent, and a judgment to this effect was signed on February 6, 2024. Additionally, the trial court signed a second, separate judgment on February 6, 2024, wherein it granted Lance's Rule for "Make Up" Custodial Periods, and also granted Lance's request for attorneys' fees in the amount of $3,854.26 in response to Carley's September 21, 2023 Petition for Protection from Abuse. It is from these two judgments that Carley appeals.

## DISCUSSION

As noted above, this court, in its previous ruling, remanded the matter to the trial court "for a prompt hearing for the determination of a domiciliary parent or an implementation order in accordance with La. R.S. 9:335." **Id.** Carley claims this court ordered the trial court to "conduct a hearing[;] [n]ot render a decision based on a reading of the record." She continues, arguing the trial court "should have conducted a hearing on everything that transpired from the original trial date on August 1, 2022 to January 10, 2024 – not just take into consideration the record and the two subsequent protective order hearings." Carley concludes, stating, "[b]y failing to conduct an actual hearing, [her] fundamental right to due process was violated."

During the October 18, 2023 hearing on Carley's second Petition for Protection from Abuse, the trial court and counsel discussed the upcoming domiciliary parent hearing:

Counsel for Lance: So we're not preparing – or we're just appearing for [a] discussion and ruling from the [c]ourt?

5

| Trial court: | Yeah, I mean, when I get a better handle on the record I may have some instructions, maybe we'll get on a telephone status and we can talk about them – |
| --- | --- |
| Counsel for Lance: | Okay. |
| Trial court: | -- if I'm expecting something from y'all on this particular day. I was just trying to pick a day while I had you here. |
| Counsel for Carley: | Okay. That's a great question 'cause I didn't know what I was suppose to be preparing either other than appearing. |
| Trial court: | Right. Right now, you know, nothing because I don't have anything else. And I want to give you a date to also consider the things that we talked about in [c]hambers and possibly get a resolution. |

Later, on December 12, 2023, Judge Engolio's law clerk emailed counsel for both parties, noting, "[w]hen the trial date was scheduled, back in October, Judge Engolio indicated that she would read the transcript of the previous domiciliary trial held before Judge Batiste and let you know if she needed more evidence or information." Further, on December 18, 2023, Judge Engolio's law clerk emailed counsel for both parties again, stating, "Judge Engolio is not requesting the production of any further evidence or information for the hearing Wednesday." However, on January 10, 2024, the day of the domiciliary parent designation hearing, counsel for Carley, for the first time, noted she was "prepared to have a hearing on [the] matter, [and] [t]here's no instruction for the [c]ourt to review the record and render a ruling." The trial court responded, "[w]hy – why are you telling me this different now that that's your appreciation after we had an extensive, detailed conversation on whether or not there needed to be a hearing? And you argued to the [c]ourt in [c]hambers that there was to be nothing new."

Despite Carley's argument to the contrary, without the filing of any new pleading which might allow for the introduction of alleged new evidence, the trial

6

court's January 10, 2024 hearing to determine domiciliary parent status was limited to the record as presented to the trial court. This court remanded the matter back to the trial court for the straightforward determination of which party is to be Wyatt's domiciliary parent. Moreover, the definition of a "hearing" does not automatically require the introduction of new evidence. Rather, it is a "formal, scheduled setting in which an affected person presents arguments to a decision maker." Black's Law Dictionary 1760 (12th ed. 2024). There is no requirement that argument *and* evidence be presented at a hearing. Based on our review of the record, this was the appreciation of the trial court and counsel for the parties leading up to the January 10, 2024 hearing.

Second, and in a one paragraph argument, Carley claims the trial court erred in designating Lance as Wyatt's domiciliary parent, arguing, "[she] is entitled by law to present her evidence showing that Lance is not the right parent to be designated as the domiciliary parent. Until [she] is afforded her day in court, she cannot show Lance's actions over the past two (2) years included but not limited to excessive working hours while he supposedly has Wyatt, passing Wyatt off to his parents to raise[,] and having multiple live-in partners. Once she is able to present her evidence of these events, Carley is confident that the [c]ourt will see she is the proper parent to be designated as the domiciliary."

During the January 10, 2024 hearing, the trial court designated Lance as Wyatt's domiciliary parent, stating:

> Thank you. All right, so here's my ruling on the domiciliary status. [Carley] had been acting as the domiciliary parent without prejudice, and that was pursuant to the Hearing Officer's recommendation or huh, yeah, it was her recommendation. As such, we've seen deficiencies in her duties and judgment as domiciliary parent.
>
> The domiciliary parent is expected to make all decisions affecting the child. And failure to confer with the other parent, the non-domiciliary parent regarding health, education, and welfare would be considered a deficiency in her duties.

7

[Carley] failed to communicate her move to Acadia Parish prior to moving. [Carley] failed to timely communicate health information regarding the child's ear tube surgery, and even in the hearing transcript from August 1st of 2022, [she] was evasive with questions regarding the child's pediatrician at the time of the hearing. She answered with one pediatrician, and then later when she was being asked questions by a different lawyer[,] she gave information on a different pediatrician.

She also failed to confer with [Lance] regarding daycares that she was exploring. Also, it was seen that she failed to exercise good judgment in filing a frivolous Petition for Protection first alleging domestic abuse, which was denied by the [c]ourt and also deemed frivolous. During the taking of evidence by huh – from [Carley], the [c]ourt found and noted in its ruling that [her] testimony was impeached by her own witnesses.

Then her allegations of sexual abuse, which she did not – she dismissed on her own motion, presumably due to lack of evidence, following that, or in the midst of that[,] the [c]ourt shared with counsel in [c]hambers that the minor child seemed to be coached in each of the recordings of the child, namely [Carley's] cell phone video, the Audrey Hepburn Center's audio interview, and the Child Advocacy Center's video.

Further, [Carley's] filing of sex abuse allegations resulted in [Lance] losing time with the minor child, and as of a December 18th email between my law clerk and Mr. Saffiotti, and I believe Ms. Streva was on it, the [c]ourt was informed by counsel that [Carley] had not yet allowed any make-up time.

The [c]ourt's decision to name [Lance] domiciliary parent at this time is in an effort to achieve the child's best interest since [Carley] has demonstrated an interim – on an interim basis her inability and intention as domiciliary parent, which has been found to be unacceptable to this [c]ourt for the reasons I've stated.

Despite Carley's claim that the trial court erred in designating Lance as the domiciliary parent, on appeal, this court has nothing to review. The record as designated on appeal is silent as to any proceeding in this matter prior to April 27, 2023. As such, all of the evidence, transcripts, etc. which formed the basis of the August 1, 2022 trial are not in the record. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. **City of Hammond v. Parish of Tangipahoa**, 2007-0574 (La. App. 1st Cir. 3/26/08), 985 So.2d 171, 176. Further, the appellant is charged with the responsibility of completeness of the record for appellate review, and the inadequacy of the record is imputable to her. See **Niemann v. Crosby Dev. Co., L.L.C.**, 2011-1337 (La. App.

8

1st Cir. 5/3/12), 92 So.3d 1039, 1044. While Carley objects to the trial court's designation of Lance as Wyatt's domiciliary parent, this court does not have any ability to review the record on which the trial court made such a determination. Additionally, although Carley claims she has evidence which might support a finding that she is the suitable domiciliary parent, she did not file any appropriate motion which might allow the introduction of such evidence, therefore it was not considered by the trial court and cannot be considered by this court. Carley's own appellant brief admits such evidence was not before the trial court: "[u]ntil Carley is afforded her day in court, she cannot show Lance's actions [...]" effectively disqualified him from being Wyatt's domiciliary parent. Moreover, while the trial court did consider Carley's two Petitions for Protection from Abuse in its ruling, we find no error by the trial court. These petitions were filed *by* Carley and the trial court could not "unhear" the arguments and proceedings presented before it on these petitions at the later held domiciliary parent hearing.

The trial court's determination on child custody matters is entitled to great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse. **Mulkey v. Mulkey**, 2012-2709 (La. 5/7/13), 118 So.3d 357, 368. As the record before this court is silent as to the August 1, 2022 proceedings, which the trial court used and reviewed in making its domiciliary parent determination, and as Carley did not file any appropriate pleading which might allow for the introduction of new evidence before the trial court made its domiciliary parent ruling, it is impossible for us to find any abuse of discretion by the trial court in designating Lance as Wyatt's domiciliary parent.

Lastly, Carley claims the trial court erred in awarding Lance attorneys' fees in response to her September 21, 2023 Petition for Protection from Abuse. She argues she "voluntarily dismissed her [petition] [...] after she was able to review all of the child's medical records and the CAC interview[, ultimately] realizing that she

would likely not be able to meet her burden of proof. [...] However, this does not mean that her filing was frivolous." Moreover, Carley asserts "[t]he record shows there was never a finding by the [trial court] that [her petition] was frivolous." Accordingly, Carley states the award of attorneys' fees to Lance was made in error.

Louisiana Revised Statutes 46:2136.1, which governs the costs to be paid in proceedings made under the Domestic Abuse Assistance Act, authorizes sanctions for frivolously filing a Petition for Protection from Abuse:

> A. Except as provided in Subsection B of this Section, all court costs, attorney fees, costs of enforcement and modification proceedings, costs of appeal, evaluation fees, and expert witness fees incurred in maintaining or defending any proceeding concerning domestic abuse assistance in accordance with the provisions of this Part shall be paid by the perpetrator of the domestic violence, including all costs of medical and psychological care for the abused adult, or for any of the children, necessitated by the domestic violence.
>
> B. If the court determines the petition was frivolous, the court may order the nonprevailing party to pay all court costs and reasonable attorney fees of the other party. Failure to appear at a hearing on the petition shall not on its own constitute grounds for assessing court costs and fees against the petitioner.

Absent a determination that a Petition for Protection from Abuse is frivolous, a trial court is not authorized to assess costs of the proceedings against the petitioner. See **Rogers v. Rogers**, 2019-0143 (La. App. 1st Cir. 9/27/19), 287 So.3d 749, 752.

During the October 18, 2023 hearing on Carley's September 21, 2023 Petition for Protection from Abuse, Carley voluntarily dismissed this pleading, at which time Lance's counsel requested attorneys' fees "for having to prepare for this[.]" The trial court asked Lance's counsel to "reconsider [his] position" since "we didn't have to go forward with testimony today[.]" However, a formal ruling on the issue of attorneys' fees was not made by the trial court at that time. Lance repeated his request for attorneys' fees in his October 24, 2023 Rule for "Make Up" Custodial Periods. Later, during the January 10, 2024 hearing, Lance's counsel again reiterated his request for attorneys' fees, arguing:

Your Honor, I know from that hearing that I asked for attorneys' fees, and the [c]ourt asked me to think about the matter and we would take it up later. There's no way that I don't recall that having occurred, and she dismissed her pleadings with prejudice after we spent a day and a half trying them. She, herself, obviously, believe[s] that her pleadings were frivolous and unfounded. So I believe I have the right to ask for attorneys' fees for that and to take up that matter with the [c]ourt today, which I'm asking to do.

Following additional oral argument between the parties, the trial court ruled, expressly finding that Carley's September 21, 2023 Petition for Protection from Abuse was frivolously filed, as follows: "And at this time, I understand that it was dismissed on [Carley's] own motion due to lack of evidence; I think that's tantamount to frivolousness. And I will find – this [c]ourt will make a finding that it was frivolous." The trial court went on to state that the video of Wyatt submitted with Carley's September 21, 2023 Petition for Protection from Abuse was taken by her and "it appears [...] that the child [was] coached. So she had access to that prior to filing the petition." Ultimately, the trial court awarded $3,854.26 in attorneys' fees to Lance for Carley's frivolously filed September 21, 2023 Petition for Protection from Abuse.

A trial court's factual determination as to whether a Petition for Protection from Abuse was frivolously filed is subject to a manifest error standard of review. See **Mason v. Thompson**, 2023-0730 (La. App. 1st Cir. 2/1/24), 2024 WL 446043, *4 (unpublished), writ denied, 2024-00273 (La. 4/23/24), 383 So.3d 607; cf. **Landry v. Landry**, 2021-0337 (La. App. 1st Cir. 10/8/21), 331 So.3d 351, 356, writ denied, 2022-00044 (La. 3/2/22), 333 So.3d 835 (a trial court's determination regarding the imposition of sanctions pursuant to La. Code Civ. P. art. 863 is subject to the manifest error standard of review). The manifest error standard of review obligates an appellate court to give great deference to the trial court's findings of fact. We will not reverse factual determinations, absent a finding of manifest error. **Almon v. Almon**, 2005-1848 (La. App. 1st Cir. 9/15/06), 943 So.2d 1113, 1115.

11

Accordingly, and contrary to Carley's argument, during the January 10, 2024 hearing, the trial court clearly made a factual finding that the September 21, 2023 Petition for Protection from Abuse was frivolously filed, particularly in light of the coaching of Wyatt by Carley regarding the allegations of sexual abuse. On review, we find no manifest error in the trial court's decision.

## CONCLUSION

The trial court's February 6, 2024 judgments, first designating Lance Boudreaux as domiciliary parent and, second, granting an award of attorneys' fees in the amount of $3,854.26 to Lance Boudreaux for Carley Webster's frivolously filed September 21, 2023 Petition for Protection from Abuse, are affirmed. All costs of this appeal are assessed to the appellant, Carley Webster.

**JUDGMENTS AFFIRMED.**

STATE OF LOUISIANA                LANCE BOUDREAUX

COURT OF APPEAL                   VERSUS

FIRST CIRCUIT                     CARLY WEBSTER

 DOCKET NUMBER         2024 CU 0692


**MILLER, J., dissenting.**

I respectfully dissent from the majority's opinion herein.

The trial court, at this court's direction, determined which parent should be designated the domiciliary parent. The trial court's determination was based upon the record that was before the court of appeal, but also was in consideration of other evidence that had accumulated in the interim. The additional evidence considered by the trial court included evidence presented in a protective order hearing, which was ultimately denied and determined to be frivolous, and the filing of a second protective order that was dismissed before it was heard. When choosing the domiciliary parent, the trial court could not ignore what had occurred in court between the appeal of the September 1, 2022 judgment and the January 10, 2024 hearing to designate a domiciliary parent. Trial courts should not feign ignorance when deciding matters before them – in particular when deciding custody matters. However, I believe the parties should have been given the opportunity to confront this evidence at the hearing ordered by this court. In denying this opportunity, I believe the trial court erred.

As to the award of attorney's fees associated with the filing of the second protective order, I am unable to discern how the court determined the filing was frivolous as the matter was dismissed before it could be heard. While I am aware that such filings are often made in bad faith and as a litigation tactic, I do not necessarily believe that the voluntary dismissal of a petition due to a lack of evidence is tantamount to a finding that its filing was frivolous. Often times, litigants are

1

unable to present the evidence they intended, have reevaluated said evidence, or their fortitude fails in the end. <u>See</u> <u>Lassair on Behalf of T.P.J. v. Paul</u>, 2022-0320 (La. App. 4th Cir. 12/14/20), 353 So. 3d 1048, 1055 ("the fact that Plaintiff did not meet her burden of proof on a protective order … does not necessarily establish that the action was frivolous"). Thus, I conclude the trial court's award of attorney's fees for the second protective order application was error.