# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-344


**ELEANOR JOHNSON**

**VERSUS**

**ZACHERY HEFLIN AND EUDORA THRASHER**



\*\*\*\*\*\*\*\*\*\*

ON APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 79,813-B
HONORABLE CHUCK R. WEST, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JONATHAN W. PERRY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jonathan W. Perry, Sharon Darville Wilson, and Guy E. Bradberry, Judges.



**AFFIRMED IN PART; REVERSED, IN PART; AND RENDERED.**

John H. Pucheu
John Pucheu Attorney LLC
P. O. Box 1109
106 Park Avenue
Eunice, Louisiana 70535-1109
(337) 457-9075
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    Eleanor Johnson

Christopher M. Ludeau
Ludeau Law, LLC
P. O. Box 526
Ville Platte, Louisiana 70586
(337) 363-2388
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    Zachery Heflin and Eudora Thrasher

**PERRY, Judge.**

This case addresses the termination of a personal servitude of habitation granted to Eleanor Denise Johnson ("Eleanor"), the wife of Billy Lamar Johnson ("Billy"), in an act of sale/mortgage of Billy's separate property executed by him to his granddaughter, Eudora Thrasher ("Eudora"), and Zachery Heflin ("Zachery"),[1] Eudora's fiancé. For the following reasons, we affirm, in part, and reverse, in part.

## FACTS AND PROCEDURAL HISTORY

This case has its beginnings in Billy's attempt to provide his wife, Eleanor, with a place to live after he died. Initially, Billy wrote a will on November 7, 2016, granting Eleanor a lifetime usufruct over their home and acreage at 3308 Crooked Creek Parkway. In addition to a two-story home, there was also a two-bedroom, one bath, outdoor kitchen with an attached carport (collectively "the outdoor kitchen") on the property. After Billy was unable to climb up and down the steps of the two-story home, he and Eleanor moved into the outdoor kitchen. On January 7, 2021, Billy executed a sale and mortgage of this and other property to Eudora and Zachery.[2] In the sale/mortgage, the following language was included:

> Billy Lamar Johnson and Eleanor Denise Manuel Johnson will remain in their residence located on the property for the remainder of their natural life, no other person will be in said residence other than those named herein[.]

Billy and Eleanor lived in the outdoor kitchen until Billy's death on August 10, 2021. Thereafter, Eleanor lived in the outdoor kitchen. On January 31, 2022, after issues arose about her access to a water supply and the extent of her right of habitation, Eleanor filed a petition for declaratory judgment naming Eudora and Zachery

---

[1] The record sometimes spells Zachery's name as Zachary. For consistency, we will use Zachery throughout this opinion.

[2] Although Eudora and Zachery were not married at the time of this credit sale, the record shows they were later married.

(collectively, "the defendants") as parties to the proceeding. In the petition, Eleanor sought the right to have water piped to her residence in the outdoor kitchen, along with various other requests, including a declaration of the boundaries of the property to which she was granted residence. The defendants responded, seeking to require Eleanor to install her own waterline and ordering her to reimburse them for the costs of water which had been supplied to the outdoor kitchen before she installed her own waterline, as well as demanding that she clean the outside of the outdoor kitchen. On March 8, 2022, the trial court signed a consent judgment regarding Eleanor's right to have water piped to her residence. In that consent judgment, Eleanor was afforded a thirty-day period within which to have a separate water meter and piping installed to supply water to the outdoor kitchen, and she was required to pay one-half the water bill during that period. Finally, other issues raised in the petition for declaratory judgment and the response to that filing were reserved for a later hearing.

On May 18, 2022, after hearing various stipulations and evidence, the trial court granted the following declaratory judgment, which states, in part:

I. **IT IS ORDERED, ADJUDGED AND DECREED** that ELEANOR DENISE MANUEL JOHNSON is recognized as a third-party beneficiary of a personal servitude of habitation established in an Act of Credit Sale from Billy Lamar Johnson to [Zachery] Tye Heflin and Eudora Marie Thrasher dated January 7, 2021, recorded as Act No. 647948 in the records of the Clerk of Court Evangeline Parish Louisiana.

II. **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the personal servitude of habitation in favor of ELEANOR DENISE MANUEL JOHNSON shall burden the property acquired by [ZACHERY] HEFLIN and EUDORA THRASHER in the aforementioned Act of Credit Sale ("the property") and shall be on the following terms and conditions:

A. ELEANOR DENISE MANUEL JOHNSON's right of habitation shall burden the secondary residence situated on

2

the property, which secondary residence is shown on the photograph filed in this matter as Johnson Exhibit No. ___.[3]

B. The [sic] ELEANOR DENISE MANUEL JOHNSON's right of habitation shall include the whole residence and all areas under the roof of the residence including the carport and the porch; however, this right of habitation does not include the yard or any of the outbuildings that Eleanor Denise Manuel Johnson and Billy Lamar Johnson were using before the death of Billy Lamar Johnson.

C. In accordance with Civil Code Article 634, ELEANOR DENISE MANUEL JOHNSON shall have exclusive use of the aforementioned residence and may receive friends or guests, however, in accordance with the limitation stated in the Act establishing said habitation, she may not have any other person live in the residence with her.

D. In accordance with Civil Code Article 635, ELEANOR DENISE MANUEL JOHNSON is bound to use the residence as a prudent administrator and at the expiration of her right to deliver it to the owner of the property in the condition in which she received it, ordinary wear and tear excepted.

E. In accordance with Civil Code Article 636, since ELEANOR DENISE MANUEL JOHNSON has a right of habitation over the entire home, she is liable for ordinary repairs, for the payment of taxes, and for other annual charges. When ELEANOR DENISE MANUEL JOHNSON desires to make repairs or perform maintenance on the residence, she may use a reasonable area of the property immediately adjacent to the residence for purposes of making such repairs or maintenance. She shall give the owner of the property reasonable notice of her plans for such maintenance and repairs and the property owner shall not interfere with such maintenance or repairs whether done by her or by her agents or contractors, so long as said repairs or maintenance does not unduly interfere with the property owner's reasonable use and enjoyment of the primary residence.

F. In accordance with Civil Code Article 638, ELEANOR DENISE MANUEL JOHNSON['s] right of habitation shall terminate at her death.

G. In order to exercise the right of habitation established in her favor, ELEANOR DENISE MANUEL JOHNSON shall have the following additional accessory rights:

---

[3] The exhibit number was left blank in the trial court's judgment.

1. Since ELEANOR DENISE MANUEL JOHNSON will be responsible for providing her own water, electricity, and other utilities, she shall have servitudes for installation of water lines, electric lines, cable lines and other utilities used to make the secondary residence habitable and the owners of the property will not interfere with her agents or contractors who are installing or servicing utility lines.

2. ELEANOR DENISE MANUEL JOHNSON shall have a servitude of passage over the driveway used by the owners of the main residence to access the nearest public road. This servitude of passage shall extend to friends and guests that she may host in the residence pursuant to Civil Code Article 634.

3. ELEANOR DENISE MANUEL JOHNSON's right of habitation includes the carport attached to the secondary residence but if she needs additional parking space for her friends or guests, the owners of the property will cooperate by allowing parking in a designated area of the property. More specifically, said additional parking shall be that area to the right of the driveway, before the previously existing cattleguard, near the oak trees. If the owners of the property provide said additional parking area and friends or guests of ELEANOR DENISE MANUEL JOHNSON park vehicles outside that area, then the property owners may have such vehicles towed away and may seek other remedies provided by law; however, if the owners of the property do not cooperate with providing said additional parking for the friends or guests of ELEANOR DENISE MANUEL JOHNSON, then they shall not be allowed to limit the area where such friends or guests may park.

Subsequently, on November 15, 2022, the defendants filed a motion for contempt seeking to terminate Eleanor's right of habitation. In their filing, the defendants contended that Eleanor allowed a male friend to spend various nights in the residence in violation of conditions to the right of habitation provided in the mortgage and expanded upon in the declaratory judgment. They further sought

4

extinguishment of Eleanor's right of habitation for failure to maintain her yard, clean the exterior of the residence, and install a waterline to the outdoor kitchen.

After hearing argument and considering testimony on February 2, 2023, the trial court rendered judgment finding, in pertinent part:

> **IT IS ORDERED, ADJUDGED AND DECREED** that in accordance with Civil Code article 623, the right of habitation over 3310 Crooked Creek Parkway, Ville Platte, Louisiana 70586, granted in favor of **ELEANOR JOHNSON** is hereby terminated due to her neglect in making ordinary repairs to the residence and said property is to be returned to **ZACHERY HEFLIN** and **EUDORA THRASHER.**

> **IT IS ORDERED, ADJUDGED AND DECREED** that in accordance with Civil Code article 624, despite the orders of this Court, **ELEANOR JOHNSON** may prevent the aforementioned termination of habitation by taking appropriate corrective measures of cleaning the entirety of the residence's exterior within forty-five (45) days of this order.

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that in accordance with Civil Code article 623, the right of habitation over 3310 Crooked Creek Parkway, Ville Platte, Louisiana 70586, granted in favor of **ELEANOR JOHNSON** is hereby terminated due to her abuse of her enjoyment of said right, as she is deemed to be cohabitating with a significant other in said residence. Such cohabitation is a violation of the habitation restrictions set forth in the January 7, 2021 Act of Credit Sale from Billy Lamar Johnson to Zachary Tye Heflin and Eudora Marie Thrasher.

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that **ELEANOR JOHNSON** shall have sixty-seven (67) days from this order of the Court to remove her personal belongings from the residence.

The trial court's judgment was signed on March 24, 2023. Shortly thereafter, the trial court granted Eleanor's timely request for a suspensive appeal.

### APPELLANT'S ASSIGNMENTS OF ERROR

I.    The lower court erred when it failed to recognize that the vague language of the grant of the right of habitation outlined in the Sale/Mortgage was superseded by the stipulations made in open court and incorporated in the Declaratory Judgment of 5/18/22.

II. The lower court erred when it allowed over objection that the intention of the parties had a bearing on an understanding of the right of habitation;

III. The lower court made an error of law by failing to recognize that the Declaratory Judgment and Appellant's right of habitation was designed to last her entire life. The court's oral reasons show the unfounded conclusion that, "*The purpose of right of habitation is [to] give her a place to live until she can move on*" even though the Declaratory Judgment says the right of habitation was for life. The lower court's error of law on this issue led it in wrong directions on the other issues.

IV. The lower court erred when it failed to recognize that the legal question to be answered was whether Appellant violated the portion of the Declaratory Judgment that said, "in accordance with the limitation stated in the Act establishing said habitation, she may not have any other person live in the residence with her." The court's oral reasons said it terminated the right of habitation because it found that Mrs. Johnson was, "*in a serious relationship with a man.*" The question of whether Mrs. Johnson was in a "*serious relationship with a man*" had no bearing on the legal issue of whether she had "any other person live in the residence with her."

V. The lower court made a manifestly erroneous finding of fact by concluding that Appellant and Mr. "Charlie" Beiza were living together in two residences without recognizing that Mr. Beiza stayed at 3310 Crooked Creek Parkway only nine nights in five months.

VI. The lower court made a manifestly erroneous finding of fact by terminating the right of habitation based on alleged cohabitation despite uncontradicted evidence that Mr. Beiza lived in Abbeville, worked in Kaplan, kept no toothbrush, clothes, or other personal belongings in the residence, and only stayed at the residence nine nights over a period of five months.

VII. The lower court made an error of law by finding that Appellant's actions were grounds to terminate her servitude based on Civil Code Article 623 since the mere failure to clean the outside of a residence does not constitute "waste," nor does it constitute "failure to make ordinary repairs," nor does it constitute "abuse of enjoyment." Civil Code Article 623 requires proof of at least one of those things in order to terminate a servitude of usufruct or habitation.

VIII. The lower court made a manifestly erroneous finding of fact by holding that Appellant's failure to clean the outside of the

residence was grounds for terminating her habitation under Civil Code Article 623 even though there was no real evidence presented to show Mrs. Johnson had acted unreasonably or that the residence was deteriorating due to her acts or failures to act.

IX. The lower court made an error of law and fact by failing to award Appellant attorney fees despite the fact that R.S. 13:4611 says, **"(g) The court may award attorney fees to the prevailing party in a contempt of court proceeding provided for in this Section."**

## APPELLANT'S ARGUMENTS

Eleanor argues that although the sale/mortgage had vague language about her right to remain in the outdoor kitchen, the stipulations made by the parties on March 18, 2022, and the Declaratory Judgment of May 18, 2022, superseded that vague and unenforceable language. Eleanor further argues that instead of trying to read the mind of her deceased husband, any disputes over any alleged breach of her right of habitation should be based on what is contained in the Declaratory Judgment.

Eleanor points out that the defendants contend she abused her right of habitation by having a male guest live in the residence and that justifies termination of her servitude under La.Civ.Code art. 623. Thus, she argues that the legal and factual question is whether she actually had some other person live in the residence with her. According to Eleanor's reading of the record, she contends that the evidence shows that a male friend of hers stayed in the residence nine times between September 4, 2022, and February 2, 2023. Thus, she says this evidence fails to show she ever had any other person live in the residence with her.

In addition, Eleanor argues there is no merit to the defendants' contention that the servitude of habitation should be terminated because she neglected to maintain the condition of the residence. She contends that the record shows that the condition of the residence did not change since she began occupying it. Additionally, she

7

argues that it is unreasonable to expect her to have gotten the residence pressure washed between December 28, 2022, and February 2, 2023.

## APPELLEES' POSITION

The defendants point out that Eleanor mischaracterized the facts in the following instances: (1) when she contends that the trial court terminated the right of habitation because she was in a serious relationship with a man—that is incorrect because in its oral reasons for termination, the trial court stated that the issue was whether she was living with another person; this is what it found; and (2) when she contends that she only had an overnight guest for nine nights between September 4, 2022 and February 1, 2023—photographic evidence showed nine nights and the testimony showed anywhere between ten and twenty times.

The defendants further contend that the trial court properly concluded that Eleanor failed to maintain the residence. They point to photographic evidence of mildew, dirt and grime accumulations on the residence that was not present when the right of habitation was granted and further point out that this condition worsened since then.

## LAW AND DISCUSSION

"A real right is a right a person has in a thing, a matter of property law. The nature of a real right is one of ownership and its dismemberments." *Monroe Real Estate & Dev. Co., Inc. v. Sunshine Equip. Co., Inc.*, 35,555, p. 5 (La.App. 2 Cir. 1/23/02), 805 So.2d 1200, 1203. "Habitation is the nontransferable real right of a natural person to dwell in the house of another." La.Civ.Code art. 630. As stated in La.Civ.Code art. 631, "[t]he right of habitation is established and extinguished in the same manner as the right of usufruct." Addressing further the question of how the

8

right of habitation is established, Revision Comments—1976(b) to La.Civ.Code art. 631 (citations omitted) states, in pertinent part:

> Since the right of habitation is never created by operation of law, this provision refers, by necessity, to establishment by juridical act. The establishment of the right of habitation by contract or by will is subject to the general rules concerning the substance and form of juridical acts. Thus, since the object of the right is immovable property, the law requires a written instrument, which, in order to be effective against third persons, must be recorded. Formal, precise language is not required.

In the present case, the parties agree that on January 7, 2021, Billy, Eudora, and Zachery created a right of habitation when they executed a sale and mortgage of this and other property. They further agree that Eleanor is a third-party beneficiary of that real right.

Additionally, the parties realized that the language creating the right of habitation was vague when it simply provided that Billy and Eleanor would "remain in their residence located on the property for the remainder of their natural life, no other person will be in said residence other than those named herein[.]" After issues arose regarding Eleanor's right of habitation, litigation ensued, and Eleanor, Eudora and Zachery stipulated to various matters and presented evidence to the trial court. As a result, the trial court entered a declaratory judgment which, among other specifics, touched upon whether Eleanor abused her right of habitation by having a male guest live in the residence and failing to maintain the exterior of the outdoor kitchen. Both issues affect the larger question of whether either or both of those justify termination of Eleanor's personal servitude of right of habitation. We will address each of these issues separately.

*Termination for having a person live in the residence*

At the conclusion of the first hearing, the trial court considered whether the language of the sale/mortgage which qualified the lifetime grant of the right to habitation, namely, "no other person will be in said residence other than those named herein stated[,]" was intended to prohibit Eleanor from having visitors to the residence. It stated:

> The question I don't interpret to that particular part of the contract to mean she couldn't have anyone ever over there. I believe that the intent of that particular provision and obviously if she remarries or . . . someone move in and live with her that would be prohibited. That would be consistent with . . . Article 638 which says the right of habitation terminates at the death of the person [having the right of habitation] unless a shorter period is stipulated. . . . I believe that that particular provision was meant to limit whether or not she got remarried or had somebody cohabiting with her. Pretty much like the marriage laws are.

Against that backdrop, the parties crafted the language that the trial court adopted in its judgment, to-wit:

> In accordance with Civil Code Article 634, ELEANOR DENISE MANUEL JOHNSON shall have exclusive use of the aforementioned residence and may receive friends or guests, however, in accordance with the limitation stated in the Act establishing said habitation, she may not have any other person live in the residence with her.

Marcus L. Fontenot ("Mr. Fontenot") drafted the sale/mortgage from Billy to the defendants. Mr. Fontenot testified that he attempted to include language that created a right of habitation in favor of Billy and Eleanor. He admitted that the language used was vague. Nonetheless, he stated that he was attempting to state that the only persons who could reside in the outdoor kitchen were Billy and Eleanor. By "reside" he meant that only those two individuals could live there. Commenting further, Mr. Fontenot said that "[Billy] . . . didn't want [Eleanor] to have another man live with her there . . . if he passed away."

Zachery testified that before signing the sale/mortgage, it was discussed that two particular persons could not be in the residence, namely Catrina, Eleanor's daughter, and Stan Townsend ("Stan"), Catrina's husband. He further stated that even though he initially thought that guests would be excluded, he did not object to Eleanor having daytime visitors and overnight visitors for "a weekend, a night, two nights you know not two weeks, three weeks, a week."

Eudora testified that prior to executing the sale/mortgage, she, Zachery, and Billy discussed that it would be okay if Billy and Eleanor stayed in the outdoor kitchen until they died. However, if Billy died, she also understood that Eleanor could stay in the outdoor kitchen "as long as she didn't remarry." Commenting further on what would happen when Billy died, Eudora stated, "My understanding . . . for sure no one was to move in, because my PawPaw made it very . . . clear that if something happened to him . . . he didn't want . . . if [Eleanor] got another boyfriend or got remarried he didn't want both of them living there." She further confirmed Zachery's testimony that Catrina and Stan could not be guests in the outdoor kitchen. She also said that she was agreeable to overnight visitors if they stayed for one night or two nights or a weekend.

In her testimony, Eudora told the court that an alert on her phone notifies her every time Eleanor pulls into the driveway, and she can see who it is and when they leave. Eudora said that between October 2022 and January 2023, a male friend has been with Eleanor at least ten times at the outdoor kitchen. Even though Eudora alleged that she had other photographic evidence that this male friend stayed overnight with Eleanor at least fifteen times, she did not bring those additional photos to court. Later, she did check the photos she did have with her and confirmed that they showed this male friend was there overnight with Eleanor on nine

11

occasions. Eudora opined that this male friend was not just an overnight guest because he stayed there multiple times, and, according to her, he was there every time Eleanor was there. Nevertheless, on further examination, Eudora admitted that Eleanor stayed at the residence maybe four times without this male friend. However, Eudora also testified that this male friend has not moved furniture or his things to the outdoor kitchen.

Eleanor told the trial court that she met Rosalino F. Beiza, whom she calls Charlie, in August 2022. She said that Charlie, a retired boat captain and an employee of the Kaplan sewer department, is her boyfriend and that he lives in Abbeville. They spend time together, but they are not together all the time. According to Eleanor, Charlie first stayed overnight at the outdoor kitchen on September 4, 2022. Eleanor estimated that Charlie has stayed there between five and ten times. Eleanor testified that every time Charlie made the trip to her residence, he spent the night, and because he is seventy-two years of age, she would not make him drive back to Abbeville. Eleanor testified that while Charlie was there at her residence, he cleaned and checked the breaker box, her hot water heater, and dryer.

Eleanor explained that she was unable to spend more than a few days at a time in the outdoor kitchen. Eventually, Charlie brought her a big tank of water which allowed her to stay in the outdoor kitchen for longer periods of time. She testified that she works three to four days a week at the casino in Kinder and, after a waterline was installed on December 28, 2022, she has stayed most of the time at the outdoor kitchen. She said she has spent time at Charlie's house in Abbeville, just not every night, and she does not consider Charlie's house her residence.

12

Eleanor denied that Charlie was living with her in the outdoor kitchen. She told the court that when he comes to visit her, he brings an overnight bag, and he does not keep clothes in a closet at her residence. She further said that Charlie has not moved any furniture to the outdoor kitchen, and he has left nothing permanently there. Finally, she said Charlie likes her, and he only comes when she is there, and he does not have to work.

Although under the provisions of La.Civ.Code art. 638, death terminates the right of habitation, a judicial declaration must be obtained when the recipient of the personal servitude is subject to a shorter period of duration such as the one at play herein. In the present case, the shorter stipulated period as described in the sale/mortgage was that no other person will be in said residence. The later declaratory judgment expanded the understanding of the right to habitation and provided that Eleanor "may not have any other person live in the residence with her." As the parties who were seeking termination of Eleanor's right to habitation, Eudora and Zachery had the burden of proving that Eleanor had another person living in the outdoor kitchen with her.

The determination of whether a party lived or cohabitated with another person is a question of fact subject to manifest error standard of review. *Accord Almon v. Almon*, 05-1848 (La.App. 1 Cir. 9/15/06), 943 So.2d 1113. The appellate court's review of factual findings is governed by the manifest error-clearly wrong standard. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court; and 2) whether the record further establishes that the finding is not manifestly erroneous. *Mart v. Hill*, 505 So.2d 1120 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary to

conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. *See Stobart v. State, through Dep't of Trans. & Dev.*, 617 So.2d 880 (La.1993). The manifest error standard of review obligates an appellate court to give great deference to the trial court's findings of fact. An appellate court will not reverse factual determinations, absent a finding of manifest error. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). On review, an appellate court must be cautious not to reweigh the evidence or to substitute its own factual findings just because it would have decided differently. *Bonin v. Ferrellgas, Inc.*, 03-3024 (La. 7/2/04), 877 So.2d 89.

There is no doubt that Eleanor and Charlie are in a romantic relationship. It, too, is uncontested that between September 2022 and February 2023, Charlie spent the night with Eleanor on various occasions in the outdoor kitchen. Notwithstanding the existence of that relationship, the question presented to the trial court was whether Zachery and Eudora proved by a preponderance of the evidence that Charlie lived in the outdoor kitchen—the prohibition established in the declaratory judgment.

At the conclusion of the first hearing on March 8, 2022, the trial court likened "the living with" prohibition to that which may be found in the marriage laws. One such law, La.Civ.Code art. 115, provides for the extinguishment of the spousal support obligation if there is a judicial determination that the obligee has "cohabited with another person of either sex in the manner of married persons." Although cohabitation in the manner of married persons is not essential in the present case, the elements identified in the jurisprudence relative to whether the parties were living together are informative.

14

In *Olsen v. Olsen*, 12-737 (La.App. 5 Cir. 3/13/13), 113 So.3d 274, the appellate court examined the relationship of Lynn Olsen ("Olsen") and Gary Gregory ("Gregory") and whether they were living together. Finding that Olsen and Gregory were living together, the court emphasized that Gregory received mail at Olsen's house; she and Gregory ate together at Olsen's residence; Gregory moved into Olsen's house when he was released from jail; and Gregory told his probation officer that his residence was at Olsen's house.

In *Arnold v. Arnold*, 02-819 (La.App. 1 Cir. 4/2/03), 843 So.2d 1167, it was found that Cynthia Arnold ("Cynthia") and her boyfriend, Van Pritchard, Jr. ("Pritchard"), were living together sufficient to extinguish the obligation of support owed by Cynthia's former husband. In reaching this conclusion, the appellate court emphasized that within one month of Cynthia moving out of the marital domicile, Pritchard moved into her apartment with her. Additionally, Pritchard kept his personal belongings, such as clothing, shaving cream, and razors, in the apartment, and he received his mail at Cynthia's apartment.

*Calvaruso v. Calvaruso*, 00-437 (La.App. 1 Cir. 12/30/20) (unpublished opinion), (2020 WL 7770928) is another such case. There the appellate court was asked if the trial court erred in finding Darrell Calvaruso failed to prove his ex-wife, Gwendolyn, was cohabiting with Joe Cataldo ("Cataldo") sufficient to extinguish his spousal support obligation. Finding no error in the trial court judgment, the appellate court found Gwendolyn did not have her mail delivered to Cataldo's address, she did not have his address on her driver's license, she had no utilities in her name at his home, and she did not contribute to his home expenses.

Similarly, in *Martin v. Martin*, 11-2053, p. 1 (La.App. 1 Cir. 6/8/12) (unpublished opinion) (2012 WL 2061427), the appellate court affirmed the trial

15

court's determination that Molly Martin ("Mrs. Martin") and Randy Duet ("Duet") were not living together. At the heart of that decision, the appellate stated:

> In the instant case, Mrs. Martin testified that she began a relationship with Randy Duet following her divorce from Mr. Martin and that, at the time of the hearing, she had been dating Duet for approximately ten months. Mrs. Martin acknowledged that Duet "occasionally" spent the night at her house, but denied that he lived with her. She noted that Duet owned his own home, which is where he resided and paid for his utilities. When questioned by the trial court as to how often Duet spent the night at her house, Mrs. Martin estimated that Duet had spent the night at her house about three to four times per month throughout the ten-month relationship. She further testified that Duet did not keep clothes or any personal belongings at her house, and did not help her with household expenses or groceries.

*Id.* at p. 1.

Although *Petty v. Petty*, 560 So.2d 629 (La.App. 4 Cir. 1990), is a case that predates the enactment of La.Civ.Code art. 115, it relied upon La.Civ.Code 160(A)(4) which provided for the revocation of permanent periodic alimony if the party to whom it had been awarded enters into open concubinage. In that instance, the requirement that there need to have been an openness of the illicit relationship between Katherine Furlow ("Katherine") and Emmett James ("James") was essential to finding that revocation of permanent alimony was proper. Although James had his own residence, Katherine testified that James lived at her house most of the time. In addition, they shared living expenses, she laundered his clothes and cooked the meals, and James kept clothing and toilet articles in Katherine's home. James said that he decided to stay at Katherine's home and pool groceries, and only returned to his home to pick up mail and check on things. Thus, the appellate court concluded that Katherine and James were living together.

16

We now turn to the facts before us.  In its oral reasons for judgment after the hearing of February 2, 2023, the trial court determined that Eleanor's right to habitation terminated, stating:

> The purpose of the right of habitation is [to] give her a place to live until she can move on. . . . That was everybody's intention that she would have a place to stay until she moved on.  And everybody . . . assumed she would move [on] because that's what happens in life. . . . [S]he understood she could not have a man cohabitate with her. . . .  Mr. Charlie has been there when she leaves [and] more importantly she said any time he comes visit he sleeps over.  And she said they are in a relationship. . . .  [S]he said he comes to live with [her] . . . .  And [when] she is not there she is usually at his house [.] [W]hen she is there, Charlie is usually there.  And she said it's not all the time. . . .  [T]here is a relationship here.  This is not friends and family.  Friends and family don't come stay overnight and have a relationship of that type. . . .  [T]hat goes to the heart of the right of habitation and that point I believe that [Billy] firmly believe[d] that he was attempting to take her until she found someone else and I believe she has.  And there [sic] in a serious relationship.  It's that simple.  Are they living together?  Well if I believe her and I do cause she said it a couple of times.  When she's not there she's usually at his house and when she's . . . not at her house she's usually at his house, its [sic] not all the time but their [sic] living together.

Accordingly, the trial court decreed in the judgment that Eleanor's right of habitation was terminated "as she is deemed to be cohabitating with a significant other in said residence."

After reviewing the trial court's written reasons, it is clear the trial court solely focused on the fact that Eleanor and Charlie were in a relationship as boyfriend and girlfriend.  Although the trial court used the word "cohabitate" in both its written reasons and the judgment, there is no indication what exactly the trial court meant.  If it was intended to mean that they were engaged in a sexual relationship in the outdoor kitchen, that question was never asked at trial, and the record is void of any evidence to that effect.

17

If the trial court was using the term "cohabitate" in the broader sense, i.e., simply living together in the outdoor kitchen, that determination is not supported by the record. Quite the opposite, the record shows that between September 2022 and February 2023, the time of trial, Eleanor and Charlie were together nine or ten times in the outdoor kitchen and only one time did he spend two consecutive nights there.[4] It further shows that Charlie resided in his own home in Abbeville and that the only time he could visit Eleanor at the outdoor kitchen is when she is there and he is off work on the weekend and holidays. Finally, Charlie neither moved furniture in nor left any of his belongings in the outdoor kitchen; rather, Charlie brought an overnight bag whenever he visited. Accordingly, we find the trial court manifestly erred when it found that Eleanor was living with another person in the outdoor kitchen. Therefore, we reverse the trial court judgment which found otherwise.

*Termination for failure to make ordinary repairs*

Louisiana Civil Code Article 635 states, "A person having the right of habitation is bound to use the property as a prudent administrator and at the expiration of his right to deliver it to the owner in the condition in which he received it, ordinary wear and tear excepted." "When the person having the right of habitation occupies the entire house, he is liable for ordinary repairs[.]" La.Civ.Code art. 636.

When addressing the extinguishment of the right of habitation, the codal articles which relate to usufruct may be referenced. *See* La.Civ.Code art. 631 (stating that "[t]he right of habitation is established and extinguished in the same

---

[4] Even though Eudora testified that she had photographs to show that number of visits was greater, she failed to produce that evidence at trial. In *Babineaux v. Black*, 396 So.2d 584, 586 (La.App. 3 Cir. 1981), we stated that "the failure of a litigant to produce evidence within his reach raises the presumption that the evidence would have been detrimental to his case. However, this presumption is not applicable when the failure to produce the evidence is explained." In the present case, no explanation was given for the failure to produce the photographs upon which Eudora relied.

manner as the right of usufruct.") As defined in La.Civ.Code art. 578, "[e]xtraordinary repairs are those for the reconstruction of the whole or of a substantial part of the property. . . . All others are ordinary repairs." Revision Comment (c) to La.Civ.Code art. 578 further states:

> "Ordinary repairs" is a residual category established by the process of exclusion. The usufructuary is not bound to make repairs needed at the time of the creation of the usufruct. These repairs, and attending expenses, are charged to the naked owner. The usufructuary is thus responsible only for repairs the need for which arose after the commencement of the usufruct.

*See also* Revision Comment (b) to La.Civ.Code art. 580 (stating that "[t]he usufructuary is thus responsible for repairs the need for which arose after the commencement of the usufruct.") As it relates to the present case, the removal of [mold] has been recognized as an ordinary repair. *See Succession of Crain*, 450 So.2d 1374, 1376 (La.App. 1 Cir. 1984) (stating that "removing glass mold in the kitchen, den and bedroom" is considered an ordinary repair).

In the present case, Eleanor testified that there was mildew on the roof and side of the outdoor kitchen when she and Billy first moved there. She also said that the mildew has worsened since that time.

After having consulted with her attorney at the hearing on March 18, 2022, Eleanor affirmed to the trial court that once water was established to the outdoor kitchen she "agree[d] to maintain the home in a reasonable state of cleanliness which includes . . . any kind of mildew or grime that is accumulated that could damage the home."[5] Later, in the subsequent trial for contempt and the termination of her right of habitation, Eleanor was read her earlier stipulation. Eleanor again affirmed that

---

[5] For some reason, that stipulation was not particularized and incorporated in the judgment of May 18, 2022. Instead, the judgment simply stated that in accord with La.Civ.Code art. 636 Eleanor was liable for ordinary repairs.

she agreed that once water was established, she would maintain the outdoor kitchen in a reasonable state of cleanliness. She further testified that water had been supplied to the outdoor kitchen as of December 28, 2022, and she had not yet cleaned the exterior of the outdoor kitchen.

In *Hebert v. Richard*, 15-8, pp. 5–6 (La. App. 3 Cir. 6/17/15), 166 So.3d 1265, 1271–72, *writs denied*, 15-1390, 15-1391 (La. 10/2/15), 178 So.3d 991, this court stated:

> "A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact." La.Civ.Code art. 1853. A judicial confession waives the necessity of proof on the confessed issue. *Ramelow v. Bd. of Trustees of the University of Louisiana System,* 03–1131 (La.App. 3 Cir. 3/31/04), 870 So.2d 415, *writ denied,* 04–1042 (La.6/18/04), 888 So.2d 184; *C.T. Traina, Inc. v. Sunshine Plaza, Inc.,* 03–1003 (La.12/3/03), 861 So.2d 156. "A declaration made by a party's attorney or mandatary has the same effect as one made by the party himself." *Traina, Inc.,* 861 So.2d at 159 (citing La. Civ.Code art. 1853, cmt. (b)). To constitute a judicial confession, the party's statement must be an express acknowledgement of an adverse fact. *Wood v. Fontenot,* 04–1174 (La.App. 3 Cir. 3/2/05), 896 So.2d 323, *writ denied sub nom. City of New Iberia v. New Iberia Fire & Police Civil Serv. Bd.,* 05–801 (La.5/13/05), 902 So.2d 1023. Additionally, the non-confessing party " 'must have believed the fact was no longer at issue or must have relied on it, to his detriment.' " *Opti–Flow, LLC v. Prod. Servs. Int'l, Ltd.,* 04–1357, p. 4 (La.App. 3 Cir. 6/1/05), 903 So.2d 1171, 1174, *writ denied,* 05–1748 (La.1/13/06), 920 So.2d 240 (quoting *State v. Lamb,* 31,919, p. 4 (La.App. 2 Cir. 5/7/99), 732 So.2d 1270, 1272). "A judicial confession is binding on the court and must be applied in the case in which it is made." *Bennett v. Porter,* 10–1088, p. 6 (La.App. 3 Cir. 3/9/11), 58 So.3d 663, 669.

After reviewing the transcript of the hearings of March 18, 2022, and February 2, 2023, we find Eleanor's statements in open court constituted a judicial confession that was binding on the court. Accordingly, we affirm the trial court's judgment regarding Eleanor's obligation to clean the exterior of the outdoor kitchen within the time designated in the judgment. And as provided in the trial court's judgment,

failure to timely abide by that obligation will constitute the extinguishment of Eleanor's right of habitation.

## ATTORNEY FEES

Eleanor contends that we should award her attorney fees should we reverse the trial court's finding that her right to habitation was extinguished. In support of that contention, she argues that as a successful party who has defended against a charge of contempt, she is entitled to such an award pursuant to La.R.S. 13:4611(g). We decline to do so for several reasons.

First, although we have reversed one aspect of the trial court's judgment, we nonetheless have not completely reversed the trial court's judgment. Secondly, although both parties asked the trial court to find each other guilty of contempt, it denied both requests. Thirdly, the Louisiana Supreme Court has held that La.R.S. 13:4611(1)(g) only authorizes courts to award attorney fees to a party who successfully prosecutes a rule for contempt of court. The attorney fees provision of subparagraph (1)(g) is one of the punishments referenced by the first sentence of paragraph 1 of the provision, which a court is authorized to impose on a person adjudged guilty of contempt of court. *Luv N' Care, Ltd. v. Jackel Int'l Ltd.*, 19-749 (La. 1/29/20), 347 So.3d 572. Clearly, La.R.S. 13:4611(1)(g) is inapplicable as neither party has been found in contempt. Therefore, we find no merit to Eleanor's assignment of error.

Lastly, in their brief to this court, Eudora and Zachery have requested additional attorney fees for work performed on appeal. We deny this request. "An increase in attorney's fees for services rendered on appeal is usually awarded when the defendant appeals and obtains no relief on appeal, and when the plaintiff requests it in accordance with proper appellate procedure." *Riche v. Krestview Mobile*

21

*Homes, Inc.,* 375 So.2d 133 (La.App. 3 Cir. 1979). In the present case, the trial court did not make an initial award of attorney fees, and we have only partially upheld the trial court judgment which favors defendants. Additionally, we draw the defendants' attention to *Roberts v. Robicheaux*, 04-1405, pp. 4–5 (La.App. 3 Cir. 3/2/05), 896 So.2d 1232, 1235, *writ denied*, 05-792 (La. 5/13/05), 902 So.2d 1021:

> An appellee shall answer an appeal when he desires to have the judgment modified, revised, or reversed in part, or when he demands damages against the appellant. La.Code Civ.P. art. 2133. The Appellee's "Answer Brief" does not satisfy the requirements of Art. 2133 as it is neither an answer nor an appeal. *Gibbs v. Gibbs*, 33,169 (La.App. 2 Cir. 6/21/00) 764 So.2d 261, *citing Gay v. Gay*, 31,974 (La.App. 2 Cir. 6/16/99), 741 So.2d 149.

Because the defendants have only made this request in brief and not in a timely answer, their request for additional attorney fees is further denied.

## DECREE

For the foregoing reasons, we affirm the trial court judgment insofar as it conditionally extinguished Eleanor's right of habitation. Failure to timely take appropriate corrective measures of cleaning the entirety of the outdoor kitchen within forty-five (45) days of this decree will constitute the extinguishment of Eleanor's right of habitation. We reverse and set aside that aspect of the trial court judgment which found that Eleanor Johnson's right of habitation was terminated because she was cohabitating with a significant other in said residence. Costs of this appeal are assessed one-half to Eleanor Denise Johnson and one-half to Zachery Heflin and Eudora Thrasher.

**AFFIRMED, IN PART; REVERSED, IN PART; AND RENDERED.**